IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARIUS CHRISTOPHER JOHNSON,      )
AIS, #266071,                    )
                                 )
        Petitioner,              )
                                 )
    v.                           )        CASE NO. 2:11-CV-151-MHT
                                 )                [WO]
                                 )
LEON FORNISS, et al.,            )
                                 )
        Respondents.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This civil action is before the court on a 28 U.S.C. § 2254 petition for habeas corpus

relief filed by Darius Christopher Johnson ["Johnson"], a state inmate, on February 23,

2011.[1]  In this petition, Johnson challenges a conviction for first degree robbery imposed

upon him by the Circuit Court of Montgomery County, Alabama on March 24, 2009.  The

trial court sentenced Johnson to twenty-five years imprisonment for this conviction

Johnson filed a direct appeal of his robbery conviction in which he argued that the

trial court erred in denying his requests for jury instructions on the lesser included offenses

---

[1]The law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials
for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th
Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993).  The petition indicates Johnson submitted the
petition for mailing on February 23, 2011. *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5.  In light
of the foregoing and for purposes of the proceedings herein, the court considers February 23, 2011 as the date of
filing.

of first degree theft of property and second degree theft of property.  *Respondents' Exhibit B - Doc. No. 5-4 (Johnson's Brief on Appeal)* at 9.  On December 11, 2009, the Alabama Court of Criminal Appeals affirmed Johnson's robbery conviction in an unpublished memorandum opinion.  *Respondents' Exhibit D - Doc. No. 5-6 -- Johnson v. State*, 64 So.3d 1158 (Ala.Cr.App.), *rehearing denied*, *Johnson v. State*, 73 So.3d 1227 (Ala.Cr.App. 2010), *cert. denied*, *Ex parte Johnson*, 76 So.3d 877 (Ala. 2010).  The appellate court's opinion, as is relevant to the claims raised in the instant habeas petition, reads as follows:

> The only issue presented in this appeal is whether the circuit court erred in denying Johnson's request to charge the jury on first and second degree theft of property, as lesser included offenses of robbery in the first degree.

> The indictment charged, in relevant part:

> "Darius Christopher Johnson . . . did, in the course of committing a theft of a cell phone and/or palm pilot and/or wallet and/or lawful currency and/or coinage . . . and/or other property, of some value . . . use force against the person of the owner . . . Shenzi Philandon Smith with intent to overcome his physical resistance or physical power of resistance, or threaten the imminent use of force against the person of the owner Shenzi Philandon Smith, with the intent to compel acquiescence to the taking of or escaping with the property, while the said Darius Christopher Johnson . . . was armed and/or represented himself to be armed with a deadly weapon or dangerous instrument, a gun, . . . in violation of section 13A-8-41 of the Code of Alabama..."

> Section 13A-8-2, Ala. Code 1975, defines theft of property, in pertinent part, as:

"A person commits the crime of theft of property if he or she:

" (1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property;

Theft of property in the first degree is codified in § 13A-8-3, Ala. Code 1975, which reads, in relevant part:

"(a) The theft of property which exceeds two thousand five hundred dollars ($2,500) in value, or property of any value taken from the person of another, constitutes theft of property in the first degree."

Section 13A-8-4, Ala. Code 1975, which codifies the offense of second degree theft of property provides, in relevant part:

"(a) The theft of property which exceeds two hundred fifty dollars ($250) in value but does not exceed one thousand dollars ($1000) in value, and which is not taken from the person of another, constitutes theft of property in the second degree."

It is well settled that:

"A trial court may <u>only</u> charge on a lesser included offense when there is a rational basis for a verdict convicting the accused of the lesser included offense. Ala.Code 13A-1-9(b) (1975). "A court may properly refuse to charge on lesser included offenses when it is clear to the judicial mind that there is <u>no evidence tending to bring the offense within the definition of the lesser offense</u>." *Wesley v. State*, 424 So. 2d 648, 652 (Ala. Crim. App. 1982)."

*Garrick v. State*, 589 So. 2d 760, 764 (Ala. Crim. App. 1991). (Emphasis added.)

With these principles in mind, we turn to the evidence presented at trial.

Shenzi Smith, the 17-year-old victim of the robbery, lived with his parents in Hope Hull, Alabama at the time of the robbery. He routinely stopped at the BP service station, located near the Hope Hull exit to Interstate 65, in order to purchase gasoline and food, and to visit with an employee of the service station. Smith testified that during the early evening hours of July 24, 2008, he backed his vehicle into a parking space in front of the Burger King restaurant attached to the BP service station. He was alone. While Smith was seated in his car, talking to his girlfriend on his cell phone, he noticed a white Cadillac automobile back into the parking space next to his car.

The man in the front passenger seat got out of the Cadillac, and then got into the front passenger seat of Smith's vehicle. Smith did not know the man. Smith testified that the man pointed a gun at him and stated, "[I]t's a robbery; don't try to do nothing. It's a rob game; give me your stuff." The man then searched through the glove compartment, and various other places in the car. The man took Smith's wallet, which contained $200 in cash, and Smith's two cell phones.

The robber exited Smith's car and got back into the front-passenger side of the Cadillac. When Smith told the man that he was going to call the police, the man responded, "'I ain't worried about it, I got a "chopper" [slang term for a rifle or shotgun] in the trunk.'"

As the Cadillac drove away, Smith followed in his vehicle. He wrote down the tag number of the Cadillac. Smith testified that while he was following the car, the assailant opened the car door several times, leaned out of the car, and pointed the gun at him.

Smith followed the Cadillac north on Interstate 65, and onto the exit ramp at Southern Boulevard. Smith testified that at the end of the ramp, the Cadillac turned to the right, and Smith turned his vehicle to the left. Smith drove toward his cousins' house in the Southlawn area. Smith planned on contacting the police from his cousins' house; however, he saw [another] of his cousins, Marquis White, walking on the street. Smith stopped his car, and White got in. Smith then used White's cell phone to telephone the police and report the robbery. As instructed by the authorities, Smith returned to the BP station, and White went with him.

4

Shane Kelley, an officer with the Montgomery Sheriff's Department, Wendy Briggs, an investigator with the Montgomery Sheriff's Department, and Sergeant Terrence Crawford, the supervisor of the Investigative Division, talked to Smith at the BP station. Based upon the tag number provided by Smith, the investigators were able to determine that the Cadillac was registered to a Christine Crawford. Later that night, Sergeant Crawford drove by Christine Crawford's residence, but he did not see the Cadillac at the residence.

The next day, Sergeant Crawford returned to Christine Crawford's residence and talked with Ms. Crawford. She told Sergeant Crawford that her son, Brandon Crawford, drove the vehicle. Ms. Crawford gave Sergeant Crawford permission for investigator's to search her residence. A Bulgarian SKS rifle--commonly known as a "chopper"--was recovered from a box underneath Brandon Crawford's mattress. Investigator Briggs testified that the investigators also discovered several other items inside the box: a counterfeit $20 bill, a bag containing a leafy, green substance, and some unidentified "pills."

While the investigators were at Christine Crawford's house, Ms. Crawford telephoned Brandon Crawford and told him that the investigators needed to talk to him. Later that day, Brandon Crawford went to the Montgomery Sheriff's Department, and gave Investigator Briggs a statement.

Crawford denied any involvement in the crime. Crawford told Briggs that Marquis Parker, appellant Darius Johnson, and an individual named "Keith," could provide an alibi for him. When questioned, Marquis Parker told Investigator Briggs that he knew Brandon Crawford, but that he was not with him on the night of the robbery. Briggs was not able to locate the person named "Keith."

Briggs prepared several photographic lineups--one involving Marquis Parker, one involving Darius Johnson, and one involving Brandon Crawford. From the photographic lineups, Shenzi Smith identified Brandon Crawford as the driver of the Cadillac, and he identified Darius Johnson as the man who robbed him [at gunpoint].

* * *

Brandon Crawford testified that on July 24, 2008, he loaned his car to Brandon Thomas, Darius Johnson, and Bradley Gardner. Crawford said that their plan was to purchase some drugs from Shenzi Smith and then "rob him."  According to Crawford, Brandon Thomas drove the vehicle, Darius Johnson rode in the front-passenger seat, and Bradley Gardner rode in the backseat.

Crawford testified that he did not go with the three men. Crawford claimed that a short time later, he met Thomas, Johnson, and Gardner at McGhee Place apartments. He testified that Darius Johnson was "bragging about what had happened . . . about how he took the stuff from the victim." Crawford said that Darius Johnson had a cell phone, a wallet, and some "weed." Crawford said that Bradley Gardner had a cell phone, and that Bradley later returned the cell phone to the victim.

* * *

In Crawford's statement that he gave to the Sheriff's Department, he denied any involvement in the robbery. . . . However, Crawford subsequently testified that he lied in his statement "to cover for . . . Bradley, Darius, and Brandon . . [b]ecause they tried to say that [he] was driving the car at the time that . . . the robbery was committed."

Crawford admitted that he had pleaded guilty to robbery for his participation in the offense. While Crawford was incarcerated awaiting his trial, he contacted the appellant, Darius Johnson, and asked Johnson to persuade Bradley Gardner's brother to ask Shenzi Smith to "admit that he had got robbed for some weed and not the $200 like he said."

During the defense counsel's cross-examination of Brandon Crawford, the following exchange occurred:

"Q. Mr. Crawford, you don't have any firsthand knowledge about what happened, do you?

"A. No, sir.

6

"Q. You don't know if a gun was produced or not, do you? You weren't there?

"A. They didn't have a gun, because I know how they talk, they would have showed it. So I was thinking he -- plus, he said -- he said he took [the weed]. He didn't say he pulled out anything. He said he took it.

"Q. Make sure I get this correct. Your statement is that there wasn't a gun involved in this case?

"A. No, sir.

"Q. It was a snatch and run. You know what I'm talking about?

"A. He said he took it from him. He big-boyed it.

"Q. . . . You're saying he threatened to beat him up?

"A. Yeah. He say -- he said -- when Shenzi gave him the weed, he opened it and smelled it.  He said, all right, I'll holler at you.  And he said Shenzi was like, what you doing, what you doing? He said he hopped in the car. That's when they drove off[.]

"Q. Okay. So there was never any threats made?

"A. To my knowledge, no, sir.

"Q. He just stole this weed?

"A. Yes, sir.

* * *

Defense counsel requested that the circuit court charge the jury on first- and second-degree theft of property, as lesser-included offenses of the charged offense of first-degree robbery. In support of his request, defense counsel argued that if the jury believed Brandon Crawford's testimony, the jury could conclude that Shenzi Smith gave the drugs to Darius Johnson, and that Johnson simply left without paying Smith for the drugs. Thus, he

claimed, there was no robbery, just a theft of property in the first or second degree. The circuit court refused to charge the jury on first- and second-degree theft, finding that there was no evidence to justify the charges.

On appeal, Johnson contends that Brandon Crawford's version of the incident--that Johnson essentially took Smith's marijuana without paying for it--coupled with the inconsistencies and contradictions in the State's evidence, warranted a charge on first- and second-degree theft. Johnson argues that it would have been plausible for the jury to infer that the exchange between Smith and him was simply a drug deal gone awry, and that he was guilty only of theft, and not a robbery. In support of his contention, Johnson maintains that there were three possible scenarios for the jury's consideration:

> "[O]ne, the case as presented by the victim, Shenzi Smith, the Appellant committed robbery in the first degree by use of a firearm; two, the case as presented by the Appellant, he was not there and therefore is not guilty of any offense; or three, the case as presented by the State of Alabama through its witness . . . Brandon Crawford, the Appellant is guilty of some degree of theft, based on the believed value of the items taken."

. . .  Accordingly, Johnson contends that the circuit court erred to reversal in refusing to charge the jury on first and second degree theft.

The State maintains that the circuit court correctly refused the requested charges.  Specifically, the State argues:

> "Although Crawford testified that he was not present when the incident occurred, he stated that Johnson told him that he 'big-boyed' some 'weed' from Smith, taking some marijuana for inspection in what was ostensibly a drug deal and leaving the scene with the drugs without purchasing [the drugs]. . .
>
> 'As Crawford conceded on redirect examination, however, Smith quite obviously did not 'just give' his cell phone and wallet to Johnson. . . . Indeed, Crawford had no

explanation for how Johnson stole the very items [a cell phone, palm pilot and/or money] he was charged [in the indictment] with stealing in the course of the robbery. If the jury were to accept Crawford's account that the incident was merely a 'snatch and run' of marijuana that Johnson was purporting to purchase from Smith, it would be left to speculate how Johnson stole Smith's cell phone and wallet. Because the only evidence of how Johnson stole these items was Smith's testimony that he was robbed at gunpoint and Johnson's plea of not guilty, Johnson was either guilty of first degree robbery or was not guilty of any crime. Accordingly, the trial court properly refused to instruct the jury on first and second degree theft of property as lesser-included offenses."

The State's argument is well-taken. The circuit court relied upon the case of *Warren v. State*, [35 So.3d 2008] (Ala. 2008), as support for its refusal to give the requested charges. In *Warren*, the Alabama Supreme Court wrote:

"This Court reviews legal issues, such as this one, de nova. In *Clark v. State*, 896 So.2d 584, 641 (Ala. Crim. App. 2000), the Court of Criminal Appeals addressed when it is appropriate to give a jury a charge on a lesser-included offense:

"'"A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses." *MacEwan v. State*, 701 So. 2d 66, 69 (Ala. Crim. App. 1997). An accused has the right to have the jury charged on "'any material hypothesis which the evidence in his favor tends to establish.'" *Ex parte Stork*, 475 So.2d 623, 624 (Ala. 1985). "[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[] weak, insufficient, or doubtful in credibility," *Ex parte Chatters*, 361 So. 2d 1106,

1107 (Ala. 1978), "'even if the evidence supporting the charge is offered by the State.'" *Ex parte Myers*, 699 So. 2d 1285, 1290-91 (Ala. 1997), cert. denied, 522 U.S. 1054, 118 S. Ct. 706, 139 L. Ed.2d 648 (1998). However, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." § 13A-1-9(b), Ala.Code 1975. "The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture." *Broadnax v. State*, 825 So. 2d 134, 200 (Ala. Crim. App. 2000), aff'd, 825 So. 2d 233 (Ala.2001), cert. denied, 536 U.S. 964, 122 S. Ct. 2675, 153 L. Ed.2d 847(2002). "'"A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury."'" *Williams v. State*, 675 So. 2d 537, 540-41 (Ala. Crim. App. 1996), quoting *Anderson v State*, 507 So.2d 580, 582 (Ala.Crim.App.1987).'"

See also, *Clark v. State*, 896 So. 2d 584, 641 (Ala. Crim. App. 2000).

A significant amount of defense counsel's effort at trial was expended toward establishing contradictions and inconsistencies in the State's evidence: namely, the inconsistency between Smith's description of the assailant's height and weight and Johnson's actual height and weight, the discrepancies regarding the time frame of the offense, whether Smith was alone in the vehicle, and the fact that neither the victim nor his father immediately reported that one of the phones was returned shortly after the crime was committed. While defense counsel did an effective job eliciting and examining these inconsistencies and contradictions in the State's

evidence, and while these inconsistencies were certainly relevant in assessing the various witnesses' credibility, it does not change the fact that there was simply no evidence to warrant charges on first- and second-degree theft of property.

Even if one were to believe Brandon Crawford's testimony in its entirety [during which Crawford (i) acknowledged that several items of property, including cell phones, a wallet and marijuana were taken from the victim, (ii) at one point stated Smith "gave" Johnson the marijuana believing Johnson would purchase the marijuana and then Johnson fled with the marijuana, (iii) on the vast majority of occasions declared that Johnson had taken the marijuana from the victim, and (iv) most importantly, conceded that Johnson stole or took the wallet and cell phone from Smith as Smith did not "just [give] those things to Darius"], there is no evidence that Shenzi Smith simply handed over his wallet and cell phones to Darius Johnson. In fact, Crawford, who claimed to have not been at the scene of the crime, had no explanation on redirect how Johnson was able to obtain Smith's wallet and cell phones without brandishing a gun. It would require sheer speculation, based upon facts not in evidence, for the jury to conclude that Johnson acquired Smith's wallet and cell phones by committing a simple theft, an exercise that the circuit court correctly recognized should not be part of the jury's deliberation.

Accordingly, the circuit court's refusal to give Johnson's requested charges on first- and second-degree theft of property [was not improper].

*Respondents' Exhibit D - Court Doc. No. 5-6* at 1-12 (citations to record and appellant

briefs omitted) (footnote omitted).

Johnson filed an application for rehearing, *Respondents' Exhibit E - Doc. No. 5-7*,

which the Alabama Court of Criminal Appeals denied on January 8, 2010. *Respondents'*

*Exhibit F - Doc. No. 5-8*. Johnson then filed a petition for writ of certiorari with the

Alabama Supreme Court. *Respondents' Exhibit G - Doc. No. 5-9*. The Alabama Supreme

Court denied the petition for writ of certiorari and issued the certificate of judgment on March 5, 2010. *Respondents' Exhibit H - Doc. No. 5-10*.

Johnson initiated this 28 U.S.C. § 2254 action on February 23, 2011 in which he recasts as a due process claim his claim that the trial court erred in refusing to provide jury instructions on the lesser included offenses of first and second degree theft of property. [2] The law is well settled that issues regarding jury instructions provide no basis for federal habeas relief unless the issue rendered the petitioner's entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 147-148 (1973); *Erickson v. Secretary for Dept. of Corrections*, 243 Fed.Appx. 524, 528 (11th Cir. 2006); *Jones v. Dugger*, 888 F.2d 1340, 1343 (11th Cir. 1989); *Tyree v. White*, 796 F.2d 390, 393 (11th Cir. 1986). Moreover, in their answer to the petition, the respondents argue that the claim pending before this court entitles Johnson to no relief as the state courts properly adjudicated this claim on the merits. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518

---

[2]The respondents treat the due process claim as the same claim presented to the state courts; however, the opinion of the Alabama Court of Criminal Appeals does not mention "due process" and resolves the claim solely on the basis of state law. Thus, the petitioner's due process claim is arguably procedurally defaulted because it was never properly presented to the state courts. The respondents do not raise the default argument; therefore, the court deems it waived. *See Moon v. Head*, 285 F.3d 1301, 1315 n. 17 (11th Cir.2002).

12

(2000).

The court entered an order allowing Johnson the opportunity to respond to the arguments that his claim challenging the trial court's refusal to give jury instructions on lesser included offenses entitled him to no relief. *Order of March 25, 2011 - Doc. No. 6*. Johnson did not file a response to this order.

Upon review of the § 2254 petition, the answer of the respondents, the state court record, the opinions of the state courts and applicable federal law, the court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II. DISCUSSION

Johnson complains that the trial court erred when it refused to charge the jury on second degree theft of property and first degree theft of property as lesser included offenses of first degree robbery. During proceedings before the trial court regarding potential jury instructions, defense counsel initially requested that the court charge the jury on second degree theft of property. *Respondents' Exhibit A (Trial Transcript Volume III) - Court Doc. No. 5-3* at 60-79. Counsel based this request solely on the manner in which Johnson obtained marijuana from the victim. *Id*. Essentially, counsel maintained that because there was testimony from one of the State's witnesses, Brandon Crawford, indicating that the victim handed over one item of the several items of property involved to Johnson, the

13

evidence supported a finding that Johnson had not taken any property from the victim such that the offense met the elements of second degree theft of property. *Id.* This argument, however, is decidedly flawed as it completely ignores the testimony provided by Crawford that during the planned robbery marijuana was not the only property obtained from the victim. Specifically, Crawford consistently testified that Johnson had also stolen/taken the victim's cell phones and wallet with Crawford further conceding that the victim did not "just [give] those things to [Johnson]." *Id*. at 33-34. Crawford also testified that he was not present when the robbery occurred and had no personal knowledge whether Johnson used a gun or represented to the victim that he had a gun during the robbery. *Id*. at 32-33.

The trial judge refused the requested jury charge on second degree theft of property because the evidence, including the testimony of Brandon Crawford, failed to provide a basis on which the jury could find the elements of this offense. *Id*. at 76-80. Counsel then inquired whether the court would "charge on theft first" to which the trial judge responded "No." *Id*. at 80.[3] At this point, counsel stated "I'm asking for a theft second. I think the record supports that" and requested that the court "note our objection [on the lack of this charge] for the record." *Id*.

---

[3]It is clear from this court's review of the record that the only testimony presented at trial addressing the actual manner in which Johnson took the victim's cell phones and wallet established that he had done so by holding the victim at gunpoint. In addition, the jury had before it Johnson's plea of not guilty to the robbery and the testimony of an alibi witness that Johnson was with him at the approximate time of the robbery and that neither of them participated in the robbery. Thus, the evidence before the jury regarding the taking of the victim's phones and wallet allowed the jury only two options - either Johnson was guilty of robbery or not guilty of robbery - and did not support a charge for first degree theft of property.

On direct appeal, counsel argued that the trial court erred in failing to give lesser included charges on first degree theft of property and second degree theft of property. *Respondents' Exhibit B - Doc. No. 5-4 (Johnson's Brief on Appeal)* at 9.  The Alabama Court of Criminal Appeals addressed the merits of this claim adversely to the petitioner. Initially, the appellate court determined "that there was simply no evidence to warrant charges on first- and second-degree theft of property." *Respondents' Exhibit D - Court Doc. No. 5-6* at 12.  The court further noted that even if the jury "believe[d] Brandon Crawford's testimony in it's entirety there is no evidence that Shenzi Smith simply handed over his wallet and cell phones to Darius Johnson.... [There was no evidence presented at trial from which] the jury [could] conclude that Johnson acquired Smith's wallet and cell phones by committing a simple theft, an exercise that the circuit court correctly recognized should not be part of the jury's deliberations." *Id*.  The appellate court therefore found no error in "the circuit court's refusal to give Johnson's requested jury charges...." *Id*.

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  *Lindh v. Murphy,* 521 U.S. 320, 326 (1997) (federal habeas petitions filed after the effective date of the AEDPA are subject to the Act's provisions). "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848,

1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

Habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

16

precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Clearly established federal law is ***not*** the law of the lower federal courts, including this court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.' *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original).

It is clear that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. 529 U.S., at 404–405, 120 S.Ct. 1495. A federal habeas court

may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405–406, 120 S.Ct. 1495. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407–408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409–410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly')." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Windom v. Secretary, Dept. of Corrections*, 578 F.3d 1227 (11th Cir. 2009) ("A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's.") (quotation and other marks omitted); *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue

18

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Putman*, 268 F.3d at 1241 ("A state court conducts an 'unreasonable application' of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.").

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851.

As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007). The AEDPA "modified

a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. Additionally, "[t]he usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be given the benefit of the doubt.' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (internal citation omitted)." *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 748 (11th Cir. 2010). "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Secretary, Dept. of Corrections*, 572 f.3d 1327, 1333 (11th Cir. 2009). "All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Secretary, Dept. of Corrections*, 331 F.3d 764, 776 (11th Cir. 2003).

Johnson maintains that the trial court erred in refusing to charge the jury on the lesser included offenses of first degree theft of property and second degree theft of property. A state trial court's refusal to give a requested jury instruction does not, standing alone, warrant federal habeas corpus relief. The refusal to give the instruction must so

20

infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (deficient jury charge is issue of constitutional dimension only where it renders entire trial fundamentally unfair); *Erickson v. Secretary for the Dept. of Corrections*, 243 Fed. Appx. 524, 528 (11th Cir. 2007) ("[E]rrors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair. *Jones v. Dugger*, 888 F.2d 1340, 1343 (11th Cir.1989)."). The evidence presented at trial demonstrated that Johnson committed first degree robbery in taking the victim's cell phones and wallet while brandishing a firearm whereas the defense during its case relied on evidence which indicated that Johnson did not participate in the taking of any property from the victim. There is nothing before this court to show that the lack of jury instructions on the lesser included offenses of first degree theft of property and second degree theft of property rendered Johnson's trial fundamentally unfair. Consequently, Johnson has failed to meet his burden of establishing a constitutional violation arising from the trial court's refusal to give the requested jury instructions.

In addition, the claim presented to this court by Johnson challenging the lack of jury instructions on lesser included offenses was decided adversely to him by both the trial court and the Alabama Court of Criminal Appeals. This court has undertaken a thorough review of the actions of the trial court, the opinion issued by the state appellate court, the relevant

facts and applicable law.  After such review, it is clear that the state courts did not decide Johnson's jury instruction claim "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law.  *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523. Consequently, the rejection of this claim by the state courts was not contrary to actual Supreme Court decisions.  Furthermore, under the circumstances of this case, it is clear that the rulings of the state courts denying Johnson relief were objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties.  Thus, Johnson is not entitled to relief from this court and the instant petition for habeas corpus relief is due to be denied.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for writ of habeas corpus relief filed by Darius Christopher Johnson be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before January 2, 2014**, the parties may file objections to the Recommendation.   Objections must specifically identify the findings in the Recommendation to which the party is objecting.  Frivolous, conclusive or general

22

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981).

Done this 19th day of December, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE